**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

KENNETH O. HENLEY,

       Plaintiff,

      v.                                            Case No.: 3:05cv295/RV/MD

GORDON R. ENGLAND,
SECRETARY OF THE NAVY,

       Defendant.
_____/

**<u>ORDER</u>**

This employment discrimination case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The parties have had a full opportunity to conduct discovery, and the defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (doc. 26). The plaintiff has filed a response in opposition to this motion.

**I. FACTS**

Unless otherwise noted, the following facts appear to be undisputed.

The plaintiff, Kenneth O. Henley, is a white male. At all times relevant, he was employed as a barber in the Aviation Plaza Barber Shop ("the barber shop") located at the Naval Air Station Exchange in Pensacola, Florida. It is generally agreed that he did his job well and that he was fast and efficient at performing haircuts. His first level supervisor was the lead barber, Pamela Pendergrast. From in or about April 1999 until July 2000, the plaintiff served as the unofficial second lead barber. Ms. Pendergrast testified at deposition that, in her opinion, he "did a very good job" as the second lead barber.

During or around the same time that the plaintiff was the second lead barber, several employees at the barber shop were violating workplace rules. The plaintiff

himself reported many of these employees. To point to just a few examples, he complained to Ms. Pendergrast about Donna May O'Brien being tardy and giving bad haircuts; he complained about Amy Ross being late and not showing for work; he complained that Virginia [last name unknown] used foul language in front of customers; and he also complained about Betty Becker being tardy and giving bad haircuts. On one occasion, Ms. Becker saw two barbers, Kim Shaw and Lee Fifter, "making out" in the lunchroom (in violation of the workplace rules), and that, too, was reported to Ms. Pendergrast.

In addition to these relatively minor infractions, there were a number of much more serious problems involving some of the employees and customers at the barber shop. For example, Leron (a/k/a Leon or David) Burnett was reported for being disorderly and cursing while on the floor because a customer had not told him "the correct way he wanted his haircut." On another occasion, Mr. Burnett had an altercation with the plaintiff and was allegedly yelling, screaming, and making vague threats involving a gun. For this, the police were called and escorted Mr. Burnett from the workplace. Gloria Peek --- who the parties agree had a well-documented history of mental problems --- once became very angry and actually threatened to kill the plaintiff after he allegedly interfered with her selling products to a customer. Two other barbers, LeRoy Turner and Kermit Lambert, had an argument between themselves (apparently not in the barber shop, although it was reported as if it occurred at work) involving threats with a gun. Security officers were called to the scene, took out their own guns, and physically removed Mr. Lambert from the barber shop in front of the customers. Another barber, Joaquin Marvin, who was also a minister, physically threatened a customer and told him he "had the right under God to kill the man if he didn't give him [a] tip." On still another occasion, Mr. Marvin verbally assaulted and threatened the plaintiff in front of a customer. Ms. Pendergrast witnessed this latter incident herself, and she described it during her deposition:

> Mr. Marvin came around the corner and got up on --- he was almost standing on the customer that was in Mr. Henley's chair, and he began to verbally assault Mr. Henley, calling him a redneck. He was informing him that he was not going to be pushed over by Mr. Henley. And Mr. Henley did not say a word. He just stood there. And I walked up, and I told him [Marvin], "You can leave the floor." He did not leave the floor. I went to the phone to call for security to have him removed. He shoved past me, when he seen me calling. I couldn't get through to security on the phone, so I walked back up out in the hall area, and he pushed me out of his way and left the shop. There was nothing really done to him other than he was moved to the mall barbershop at that time. Mr. McKinnon come to me and said, "We're just going to move him [Marvin] over to the mall barbershop." And I said, "Okay. Good. Because if you put him back in my shop, I would have to," and I told Mr. McKinnon, "I would have to go down and get a peace bond against him." Because I was afraid of the --- I had already heard that he had worked with the Exchange before and had … actually threatened [his old supervisor] Mr. Weed with a gun.

All of these employees were female and/or black, and, according to the plaintiff and the record as developed, it appears they received little or no discipline for their infractions. For example, as just noted, Mr. Marvin was only transferred to another Navy barber shop even though it is undisputed that he verbally assaulted the plaintiff in front of (and while almost standing on) a customer; he refused to leave the shop after being ordered to do so; he physically pushed his supervisor and intimidated her to such an extent that she anticipated getting a "peace bond" against him; and he reportedly threatened his previous supervisor with a gun.

The plaintiff was also charged with violating workplace rules, but the discipline he received was much more severe. On June 8, 2000, he was charged in a notice of disciplinary action for directing profanity at a customer. He admitted the allegations to his supervisors and, according to them, he was "remorseful" and promised that there would be no reoccurrence. Nonetheless, he was suspended for

fourteen days without pay. On July 25, 2001, he filed an informal complaint of "reverse discrimination" with the Navy Exchange Service Command ("NESC"). Then, on August 15, 2001, his attorney sent an Equal Employment Office Intake Questionnaire to NESC and alleged various instances of discrimination. The following month, on September 28, 2001, the plaintiff was charged in a notice of disciplinary action for making a false statement about another associate and for disorderly conduct.[1] On October 1, 2001, through his attorney, he sent a letter to the Operations Manager, Dave McKinnon, stating, *inter alia*, that he believed the discipline was in retaliation for his filing the EEO complaint. The very next month, on November 20, 2001, the plaintiff was suspended for thirty days. He filed a formal complaint of discrimination on December 6, 2001. Shortly thereafter, he was charged in yet another notice of disciplinary action, this time for allegedly giving poor haircuts and not using "hair strips." On February 19, 2002, he was terminated, and this litigation followed.

## II. APPLICABLE LAW

### A. Summary Judgment Standard

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish

---

[1] This proposed discipline arose out of the altercation between the plaintiff and Mr. Burnett, *supra*. In short, management accepted Mr. Burnett's side of the story and charged the plaintiff with falsely reporting that Mr. Burnett threatened to use a gun.

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

However, summary judgment is inappropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact will be "material" if it might affect the outcome of the case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. See id. On summary judgment, the record evidence and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the non-moving party. National Fire Ins. Co. of Hartford v. Fortune Const. Co., 320 F.3d 1260, 1267 (11th Cir. 2003).

**B. Title VII**

Title VII makes it unlawful for an employer to discharge any individual, or otherwise discriminate against that individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a)(1). In addition to this anti-discrimination provision of Title VII, there is a separate section that makes it unlawful for an employer to retaliate against the employee who has opposed any practice made unlawful by Title VII, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C. § 2000e-3(a).

Prior to bringing a Title VII action for either discrimination or retaliation, a plaintiff must exhaust his administrative remedies. This exhaustion requirement generally serves two main purposes: i) it encourages pre-suit conciliation, and ii) it notifies the employer of the alleged discriminatory practice in question. See, e.g.,

Darby v. S.B. Ballard Const. Co., 2005 WL 2077299, at *3 (M.D. Fla. Aug. 26, 2005) (*citing* Green v. Elixir Industries, Inc., 407 F.3d 1163, 1167 (11th Cir. 2005)). To that end, a plaintiff may not maintain a claim under Title VII if the claim was not contained in his administrative charge of discrimination, unless the claim is "reasonably related" to the charged conduct. See Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989). Thus, the scope of the judicial complaint is limited to the scope of the administrative investigation which can reasonably be expected to "grow out of the charge of discrimination." See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970) (binding precedent under Bonner v. City of Pritchard, Alabama, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*)).

If an employee has exhausted his administrative remedies, he may bring suit on the claims reasonably related to the charge. Where the case involves allegations of "disparate treatment," as in this case, the plaintiff "must show discriminatory intent and may establish a *prima facie* case by a showing of the factors outlined in McDonnell Douglas." Lee v. Conecuh County Bd. of Ed., 634 F.2d 959, 962 n.3 (11th Cir. 1981). Pursuant to the burden-shifting framework first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), a Title VII plaintiff alleging race discrimination will establish his *prima facie* case by showing that: i) he is a member of a protected class defined by race or gender; ii) he was subjected to an adverse employment action; iii) a similarly-situated employee outside his protected class was treated more favorably; and finally, iv) he was qualified to perform his job. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). A Title VII plaintiff alleging retaliation will establish his *prima facie* case by showing that: i) he engaged in statutorily-protected activity; ii) he then suffered an adverse job action; and iii) there was a causal connection between the two. Bass v. Bd. of County Com'rs, Orange County, Fla., 256 F.3d 1095, 1117 (11th Cir. 2001) (citing multiple cases).

After the plaintiff establishes his *prima facie* case, the burden shifts to the

defendant to rebut the inference of discrimination by presenting a legitimate and non-discriminatory reason for its employment action. McDonnell Douglas, *supra*, 411 U.S. at 802. This intermediate burden is "exceedingly light," see Holifield, *supra*, 115 F.3d at 1564 (citation omitted), and once it has been satisfied the plaintiff must show that the articulated reason was a mere pretext. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).

### III. DISCUSSION

In the operative complaint, the plaintiff advances three claims under Title VII: race discrimination (count I), gender discrimination (count II), and retaliation (count III). The defendant moves for summary judgment on all three counts, arguing that the plaintiff has not established a *prima facie* case, and, even if a *prima facie* case has been shown, judgment as a matter of law is still appropriate because there were legitimate and non-pretextual reasons for the challenged employment action.[2]

After full and careful review, I find that there are genuine disputed issues of material fact precluding summary judgment. First, I reject the defendant's argument that the plaintiff has failed to establish a *prima facie* case for discrimination and retaliation. "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference" of discriminatory or retaliatory intent. Holifield, *supra*, 115 F.3d at 1562. On the facts as presented in

---

[2] The defendant also argues briefly that two of the plaintiff's factual claims --- the fourteen-day suspension and subsequent termination --- were not exhausted at the administrative level. I do not agree. Although not expressly raised below, the record establishes that those claims are reasonably related to the charged conduct and grew out of the formal charge. Furthermore, summary judgment is inappropriate on this basis. Although the plaintiff may not *recover* for unexhausted claims, such claims may nonetheless be relevant *background evidence* to help establish discriminatory or retaliatory intent. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); see also Garrett v. U.S. Dep't of Veterans Affairs, 2007 WL 1875535, at *3 n.6 (D.N.J. June 28, 2007); Kennedy v. Guthrie Public Schools, 2007 WL 895145, at *5 (W.D. Okla. Mar. 22, 2007).

this case, there is an inference of improper motive, and thus the plaintiff has discharged this light initial burden. I also reject the defendant's argument that the plaintiff has presented insufficient evidence to demonstrate pretext. The plaintiff was allegedly fired for violating work rules, including giving poor haircuts and not using hair strips. First, the record contradicts that and appears to indicate that the plaintiff generally did a good job and gave good haircuts. Second, there is evidence that there was a concerted effort to generate three write-ups on the plaintiff in order to justify his termination. This, of course, would clearly be indicative of pretext. Third, and most importantly, several black and/or female barbers were charged with similar or much more serious infractions, and yet they were not disciplined as severely (or in some cases, apparently, not at all). The Eleventh Circuit has stated "[w]here, as here, the employer's asserted justification [for an employment action] is that the employee violated a work rule, the employee must prove pretext by showing either that [he] did not violate the work rule or that, if [he] did, other employees not within the protected class who engaged in similar acts were not similarly treated." Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1563 (11th Cir. 1987); accord Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1363 (11th Cir. 1999); Anderson v. Savage Laboratories, 675 F.2d 1221, 1224 (11th Cir. 1982). For purposes of summary judgment, the plaintiff has made the requisite showing of pretext.[3]

---

[3] My conclusion that the plaintiff has put forth sufficient evidence of pretext at this stage does not, of course, resolve the ultimate question of discrimination. See, e.g., Damon, *supra*, 196 F.3d at 1363 n.3.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (doc. 26) is DENIED.

DONE and ORDERED this 31st day of August, 2007.

*/s/ Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**